UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
DEBORAH A. NELSON

                                  Civil Action No. 15-cv-6300.

               PLAINTIFF,

   v.

                                  COMPLAINT

BENEFITMALL,
CENTERSTONE INSURANCE AND FINANCIAL
SERVICES INC.,
MICHELE GENTILE, individually,                Plaintiff Demands
JENI GIMBLET, individually, and,                 a Trial by Jury
ETA TIERNEY, individually,

              DEFENDANTS.
------------------------------------------------------------------x

Plaintiff DEBORAH A. NELSON "Nelson" or "Plaintiff"), by her attorneys, LEVINE & BLIT, PLLC, complaining of Defendant BENEFITMALL ("defendant"), CENTERSTONE INSURANCE AND FINANCIAL SERVICES INC. ("Centerstone" or "defendant") (the two companies collectively known as the "Companies"), MICHELE GENTILE, individually ("Gentile" or "Defendant"), JENI GIMLET, individually ("Gimlet" or "Defendant"), and ETA TIERNEY, individually ("Tierney" or "Defendant") (all collectively "Defendants"), respectfully alleges upon information and belief:

## NATURE OF THE ACTION

1.     This action is brought to remedy unpaid overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("Labor Law").

2.     Defendants' actions were unlawful, and Plaintiff seeks injunctive and declaratory relief, monetary, compensatory and punitive damages, liquidated damages, interest, attorneys' fees, and other appropriate legal and equitable relief pursuant to the FLSA and Labor Law, and such other further relief as this Court deems necessary and proper.

[1]

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 28 U.S.C. §1331, because the matter in controversy is a civil action arising under the Constitution, laws or treaties of the United States.

4. Supplemental jurisdiction over Plaintiff's state law claims is proper under 28 U.S.C. §1367.

5. Venue of this action in the Eastern District of New York under 28 U.S.C. §1391 is appropriate as Defendants have their principle place of business within the district, and as the Eastern District is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

6. Plaintiff is an individual who resides in Nassau County, New York.

7. Defendant BenefitMall is a business corporation with a principle place of business at 1000 Woodbury Rd., Suite 212, Woodbury, NY 11797.

8. Defendant Centerstone is a business corporation with a principle place of business at 1000 Woodbury Rd., Suite 212, Woodbury, NY 11797.

9. Upon information and belief, Benefit Mall, who was Nelson's sole employer until approximately 2013, merged with Centerstone. Subsequently, Nelson worked for the combined Companies.

10. At all times relevant to this action, Defendants were "employers" of Plaintiff within the meaning of the Labor Law§§ 190(3) and 651(6) and FLSA § 203(d).

11. Upon information and belief, at all times relevant to this action, Defendant Companies has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29

U.S.C § 207(a) insofar that it: (1) has had employees engaged in commerce or in the production of goods for commerce, and handles, sells or otherwise works on goods or materials that have been moved in or produced for commerce by any person; and (2) has had annual gross volume of sales not less than $500,000.

12. At all time relevant to this action, defendant Gentile served as Manager of the Companies and, as such, held a supervisory position over the plaintiff and was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of plaintiff's employment, including plaintiff's compensation, with the Companies.

13. At all time relevant to this action, defendant Gimblet served as Manager of the Companies and, as such, held a supervisory position over the plaintiff and was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of plaintiff's employment, including plaintiff's compensation, with the Companies.

14. At all time relevant to this action, defendant Tierney served as Manager of the Companies and, as such, held a supervisory position over the plaintiff and was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of plaintiff's employment, including plaintiff's compensation, with the Companies.

15. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of the Labor Law and FLSA, and entitled to protection. At all times relevant to this action, Plaintiff performed services as employee for Defendant in New York County, New York.

16. At all times relevant to this action, Plaintiff had the skills, experience and qualifications necessary to work in his employment position for the Defendants.

## FACTUAL ALLEGATIONS

17. Plaintiff began her employment tenure with Defendants in or about January 15, 2002.

18. Plaintiff worked for defendants up until her separation from employment in March, 2014.

19. At all times relevant to this complaint, Gentile, Gimblet and Tierney supervised plaintiff's work, set her hours worked, had knowledge about the total hours worked, assigned work to plaintiff, and reviewed plaintiff's work, among other things.

20. At all times relevant to this complaint, plaintiff served defendants as a Customer Service representative, whose chief duties consisted of answering phones and emails, and manually inputting data to enroll, renew and terminate insurance policies on behalf of defendants' customers. As such, plaintiff was a non-exempt employee with regard to overtime wages and, thus, was entitled to overtime wages.

21. At all times relevant to this complaint, Plaintiff's pay rate was approximately $21.63 per hour working for defendants.

22. At all times relevant to this complaint, plaintiff regularly worked for defendants five (5) days per week, Mondays through Fridays, though she occasionally also worked on Saturdays.

23. Additionally, at all times relevant to this complaint, plaintiff performed extensive work for defendants from home, in order to keep up with her work duties. Defendants were well aware that plaintiff performed significant work from home, as plaintiff oftentimes responded to work emails and calls after hours, from home.

24. At all times relevant to this complaint, plaintiff's work day for defendants far exceeded the scheduled eight (8) hour day, and workweek far exceeded a forty (40) hour week. In fact, at all times relevant to this complaint, and for just about every workweek, plaintiff's work day began well before 9am and lasted well past 5pm, to the point where plaintiff averaged approximately fifty (50) hours to sixty (60) hours per week, or more, throughout the entirety of her tenure.

25. At all times relevant to his complaint, plaintiff was paid hourly, but was not paid any excess compensation for hours worked over forty (40) in a workweek, except on very rare occasion.

26. For example, for week ending 7/30/2010, plaintiff worked no less than forty six (46) hours, with no compensation for the six hours over forty.

27. At all times relevant to this complaint, all of the overtime hours plaintiff worked for defendants were for the benefit of defendants.

28. At all times relevant to this complaint, defendants were well aware that plaintiff worked well over forty hours in just about each and every workweek.

29. In fact, up to approximately January of 2014, plaintiff's time clock reports regularly recorded that plaintiff worked hours over forty in a workweek, though even these timesheets under-report plaintiff's total hours worked. Though, in a blatant attempt to avoid overtime liability, the reports only gave plaintiff credit for eight (8) hours per day of work, despite the fact that the reports showed that plaintiff worked well in excess of eight (8) hours.

30. Additionally, these time sheets didn't even record the hours plaintiff worked from home, hours which defendants were well aware of, and hours plaintiff worked before even punching in to work in the mornings, as plaintiff was regularly instructed not to punch in too early, even though she was performing work that defendants were aware of.

31. Therefore, even the reports which show plaintiff working in excess of forty (40) hours per week understate plaintiff's actual work for defendants. Management was well aware of the fact that plaintiff worked well in excess of forty hours per workweek, and the Companies benefited from plaintiff's excess work.

32. Upon in formation and belief, in or around January 2014, defendants sought to prevent any records of plaintiff's times being kept, which would show over forty (40) hours per week. In

[5]

or around January, 2014, Gimblet strictly ordered plaintiff not to punch in until 9 am, even though she started working much earlier.

33. During plaintiff's entire employment tenure, with the exception of a couple of weeks at the end of her tenure, defendants paid plaintiff zero overtime wages, solely paying plaintiff for forty (40) hours per week. Defendants continued this illegal behavior despite the fact that plaintiff regularly worked approximately fifty (50) hours per workweek, and despite the fact that she was non-exempt pursuant to overtime law.

34. At all times relevant to this complaint, defendants intentionally refused to pay plaintiff overtime wages.

35. Accordingly, due to defendants' unlawful actions, plaintiff is owed by defendants 1.5 times her regular rate of pay for every hour worked over forty in a workweek, from the beginning of her employment tenure with defendants to its end, plus all statutory damages associated with these unpaid overtime wages.

### FIRST CAUSE OF ACTION AGAINST DEFENDANTS
#### (Unpaid Overtime Wages Under the FLSA)

36. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

37. At all times relevant to this action, Defendants were employers engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207(a).

38. During the entirety of plaintiff's employment tenure with defendants, plaintiff regularly worked over forty (40) hours per week for defendants, just about each and every work week, as a non-exempt employee pursuant to the FLSA.

39. Defendants failed to pay Plaintiff overtime wages of 1.5 times her regular rate of pay for all hours worked in excess of forty in a workweek in violation of 29 U.S.C. § 207(a).

[6]

40. Defendants failure to pay overtime premiums was willful.

41. As a result of Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants her unpaid overtime wages, and an equal amount representing the statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest, pursuant to the FLSA.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Unpaid Overtime Wages Under the Labor Law)

42. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of Labor Law §§ 2 and 651.

44. During the entirety of plaintiff's employment tenure, plaintiff worked over forty (40) hours per week for defendants, just about each and every week, as a non-exempt employee pursuant to the Labor Law.

45. Defendants failed to pay Plaintiff overtime wages of 1.5 times her regular rate of pay for all hours worked in excess of forty in a workweek, in violation of the Labor Law.

46. Defendants failure to pay overtime premiums was willful.

47. As a result of Defendants' Labor Law violations, Plaintiff is entitled to recover from Defendants her unpaid overtime wages, and an equal amount representing the statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest, pursuant to Labor Law.

## JURY DEMAND

Plaintiff respectfully requests a trial by Jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court enter an award:

(a)   Declaring the acts and practices complained of herein are in violation of the FLSA and New York Labor Law;

(b)   Directing Defendants to pay Plaintiff her actual damages in an amount to be determined at trial for lost overtime wages and other remuneration, liquidated damages and interest, as provided by the FLSA and New York Labor Law;

(c)   Awarding Plaintiff punitive damages;

(d)   Awarding Plaintiff reasonable attorneys' fees, together with the costs and disbursements of this action; and

(e)   Such other and further relief as this Court deems just and equitable.

{REMAINDER OF PAGE INTENTIONALLY LEFT BLANK}

Dated: New York, New York
November 2, 2015

Respectfully Submitted,

LEVINE & BLIT, P.L.L.C.

By: RUSSELL MORIARTY, ESQ. (RM 0224)

*Attorneys for Plaintiff*
Empire State Building
350 Fifth Avenue, Suite 3601
New York, NY 10118
Phone: (212) 967-3000
Fax:    (212) 967-3010